OWEN v. DUDLEY & MICHENER.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF CO-
LUMBIA.

No. 142. Argued April 7, 8, 1910.—Decided May 16, 1910.

In this case a contract made by the attorney of record with associate
counsel for professional services to be paid out of fees in an Indian
litigation in the Court of Claims construed; and, although the con-
tract provided that in case the fees were not provided for by legis-
lation but had to be proved each party should prove his fee inde-
pendently, *held*, that as the attorney of record had collected without
legislation the entire fee originally contemplated and allowable he
must account for the amount so collected by him and pay the as-
sociate counsel the amount agreed under the contract.

31 App. D. C. 177, affirmed.

THE facts, which involve the construction of a contract for
legal fees, are stated in the opinion.

*Mr. William H. Robeson* for plaintiff in error.

*Mr. Samuel A. Putman* and *Mr. Charles Poe* for defendants
in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This action was brought in the Supreme Court of the Dis-
trict of Columbia by defendants in error against plaintiff in
error to recover the sum of ten thousand dollars ($10,000),
alleged to be due on account of the following contract entered
into by the parties:

"This memorandum of agreement witnesses: That John
Vaile, Esq., of Fort Smith, Ark., having been employed by
the Eastern Cherokee Council of the Cherokee Nation, In-
dian Territory, under contract of February and April, 1900,
and ratified a third time by that council of September 4, 1901:

"And whereas, the said John Vaile has employed the services of Robert L. Owen, of Muscogee, Indian Territory, under his aforesaid contracts:

"Now, therefore, the premises considered, the said Owen hereby contracts and agrees to convey to W. W. Dudley and L. T. Michener, partners of the firm of Dudley & Michener, the sum of ten thousand dollars ($10,000) out of the fee so pledged to the said Owen, immediately upon the collection, or in the exact proportion as the said fees may be collected, it being understood and agreed that this contract is conditioned upon the collection of the fees aforesaid. And in the contingency of the said fees not being provided for by legislation, as per the contract of the Eastern Cherokee Council aforesaid, but upon proof of services, then, and in that event, each of the parties hereto shall prove service independently of the other, and said Owen shall not be expected, out of fees collected for his personal service, to pay the fee to the said Dudley & Michener, but it is understood and agreed that he will, in such a contingency, do what he can to assist Dudley & Michener to collect the fee hereby contracted by them.

"The said Dudley & Michener, on their part, agree to give their co-operation in the collection of the money due the Eastern Cherokees and to assist the said Owen as associate counsel in this case.

"Witness our hands and seals in duplicate on this 28th day of May, 1902.

   " (Signed)  ROBERT L. OWEN.  [SEAL]
   " (Signed)  DUDLEY & MICHENER. [SEAL]"

The question in the case turns upon the construction of the following provision of the contract: "And in the contingency of the fees not being provided for by legislation, as per the contract of the Eastern Cherokee Council aforesaid, but upon proof of services, then, and in that event, each of the parties hereto shall prove service independently of the other, and said Owen shall not be expected out of fees collected for his

personal service to pay the fees to the said Dudley and Mich-
ener, but it is understood and agreed that he will, in such a
contingency, do what he can to assist Dudley and Michener
to collect the fees hereby contracted by them." Certain facts
were found by the trial court as helping to clear up, with the
statute law then existing, the ambiguity of the provision.
That court deduced from them a meaning favorable to plain-
tiff in error. The Court of Appeals found in them evidence of
a different meaning and reversed the judgment of the trial
court. The facts found, in addition to the agreement, are as
follows:

"On March 20, 1905, the Court of Claims rendered a judg-
ment in the case of the Eastern Cherokees against the United
States. On April 17, 1905, the defendant, Owen, addressed
the following letter to the plaintiffs:

'The Southern,
'St. Louis, April 17, 1905.
'Dudley & Michener, Washington, D. C.

'Gentlemen: I expect to be at Riggs House about April 28th,
1905, and wish by that time you would make up a careful
affidavit of services rendered in case under contract of May 28,
'02, as I am preparing decree and wish to protect your fee.

'Yours truly,                    R. L. Owen.'

"A few days thereafter the plaintiff Michener met the de-
fendant, and was told by him that he had abandoned the
purpose to make application for fees at that time and would
postpone said application until after the Supreme Court of
the United States, to which the said case was to be appealed,
had acted thereon, and the application was so postponed by
the defendant Owen. The judgment of the Court of Claims
was affirmed by the Supreme Court with a slight modification.
After the return of the mandate of the Supreme Court to the
Court of Claims the defendant Owen, who was one of the at-
torneys of record in the case in the Court of Claims, together
with his co-attorney of record, R. V. Belt, made an applica-

tion to the Court of Claims for the allowance of 15 per cent of the judgment to them as their fee. By agreement between the said Owen and Belt and certain of their associate attorneys, other than the plaintiffs, and without notice from defendant to the plaintiffs, the court apportioned the fee of 15 per cent among said Owen and Belt and those associate attorneys, in accordance with their several contracts.

"Under the rules of the Court of Claims the attorneys of record had absolute control of the distribution of the fee allowed by the court, and the court, not recognizing any associate counsel, save as directed by the attorneys of record, the plaintiffs could not, under the rules of the court, have claimed any fee except by permission of the said attorneys of record.

"Under said decree the defendant, Owen, was allowed and was paid the full amount of fees contemplated to be received by him according to the terms of the said contract between him and Dudley & Michener.

"The plaintiffs were not parties to the said agreement between Owen and Belt, as attorneys of record, and said associate counsel, and had no further notice from Owen that any application was to be made to the court to apportion fees to any counsel except attorneys of record, nor were they ever further notified by the defendant to prepare and render proof of their services after the interview between the plaintiff Michener and the defendant, in April, 1905."

The trial court also found that defendants in error gave plaintiff in error "their co-operation, assistance and services in the prosecution and collection of the claim referred to in said contract, as said contract provided they should do," and that they have not been paid anything therefor.

The contentions of the parties are in sharp opposition. Plaintiff in error contends that the "contingency" provided for in the passage which we have quoted was direct and positive legislation, fixing his fee, and cites instances of such legislation as examples in the minds and intention of the parties.

Defendants in error contend that the legislation contemplated was that which would exempt plaintiff in error from making proof of service to the Commissioner of Indian Affairs and to the Secretary of the Interior under §§ 2103 to 2106, both inclusive, of the Revised Statutes of the United States. And that the acts of Congress which we shall presently refer to constitute such legislation.

That some legislation there might be is conceded by both parties. That some proof of service might become necessary is also conceded by both parties. The disagreement is as to what tribunal, whether the Secretary of the Interior and the Commissioner of Indian Affairs or the Court of Claims. There was some legislation, and this is urged by defendants in error as proof of their contention; there was in a sense a proof of services required, and this is urged by plaintiff in error as a support of his contention. It must therefore be conceded that each contention has plausible support, and the different meanings which the lower courts assigned to the agreement show its ambiguity. The trial court, as we have seen, taking the view contended for by plaintiff in error, the Court of Appeals that urged by defendants in error, and decided that the contract referred to the proof of services required by §§ 2103 to 2106.

Those sections provide that no agreement shall be made by any person with any tribe of Indians or individual Indians *not citizens of the United States* (italics ours) unless the agreement be in writing and in duplicate and (§ 2103, 2d pár.) "be executed before a judge of a court, and bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs endorsed upon it." Many other formalities are prescribed, and it is provided that contracts and agreements made in violation of the section "shall be null and void, and all money or other thing of value . . . in excess of the amount approved by the Commissioner and Secretary for such services may be recovered by suit in the name of the United States, . . . regardless of the amount in controversy."

By § 2104 it is provided that no money shall be paid under such contract except for fees due thereunder and by the United States through its officers or agents, and not until a sworn statement be filed with the Commissioner of Indian Affairs, showing each particular act of service, giving date and facts in detail, " and the Secretary of the Interior and the Commissioner of Indian Affairs shall determine therefrom whether, in their judgment, such contract or agreement has been complied with or fulfilled; if so, the same may be paid. and if not, it shall be paid in proportion to the services rendered under the contract." It is provided in § 2105 that if any person receives money contrary to the provisions of the preceding section he shall forfeit the sum paid, and be punished by fine and imprisonment

It will be observed that these provisions apply to Indians *not citizens of the United States,* and it is pointed out that the Eastern Cherokees became citizens March 3, 1901, c. 868, 31 Stat., pt. 1, p. 1447. That may be true, but the foundation of Owen's right to the fee was under an agreement with John Vaile, and the latter's right to engage Owen depended upon a contract with the Indians made in February and April, 1900, that is, a contract which was made before citizenship had been conferred upon the Indians. It certainly can be contended that when the Vaile contract was made it was subject to the provision of §§ 2103 *et seq.,* and that the approval of the Commissioner of Indian Affairs and the Secretary of the Interior was necessary to give it validity. It is true that it was ratified by the Indians September the 4th, 1901, that is, after they had been made citizens, but the effect of that might be disputed, and there being elements of doubt about it plaintiff in error and defendants in error well might have supposed the contract would be subject to the provisions of the Revised Statutes quoted above. The fact that legislation was sought confirms such view. If the Indians after March 3, 1901, had the same power to contract and the same extent of responsibility as white citizens, their contract would

need no confirmation by legislation. · But such freedom of · contract was certainly not supposed to exist. · It is not without importance that the first act passed contained a limitation of it, and adopted the proof of services required by the Revised Statutes. · That act conferred jurisdiction on the · Court of Claims to hear and determine the claim of the Indians and provided that any suit brought under it should "be through attorneys employed and to be compensated in the · manner prescribed in sections 2103 to 2106, both inclusive, · of the Revised Statutes of the United States."

It must therefore have been a proof of services by sworn statement, as provided in the sections referred to, that the parties contemplated. There were no other provisions in existence and there is not a circumstance to show that in the legislation that was looked forward to there would be provision for a proof of services which should supersede the contract of Vaile with the Indians and be the means through which Owen would be compensated. The legislation which was finally secured cannot be said to have required or provided for a proof of services in the sense that those words are used in the contract of plaintiff in error and defendants in error.

The final act was passed March 3, 1903. It made the Eastern Cherokees, so called, including those in the Cherokee Nation, a band or bands for all purposes of § 68 of the act of July 1, 1902, and provided that the prosecution of the suit in the Court of Claims on the part of the Eastern Cherokees should "be through attorneys employed by their proper authorities, their compensation for expense and services rendered in relation to such claim to be fixed by the Court of Claims upon the determination of such suit." March 3, 1903, c. 994, 32 Stat. pt. 1, p. 996. In other words, it recognized whatever contract of employment that should be made by the Indians with their attorneys, and it gave the Court of Claims power over the amount of compensation. But that such power might be given, or rather that there might be a limitation of the amount agreed upon, and therefore a re-

duction of the amount to be received by the plaintiff in error under the Vaile contract, was contemplated. The agreement recites that he (plaintiff in error) had been employed by Vaile, and that he agrees "to convey" to defendants in error "the sum of ten thousand dollars ($10,000.00) out of the fees so placed" to him "immediately upon the collection, *or in the exact proportion as the said fees may be collected*" (italics ours). It seems to us, therefore, that the contract contemplated two contingencies and provided for them. (1) That the fee of plaintiff in error might receive reduction, even if it should be specifically provided for by legislation. In such case the amount to be paid to defendants in error would be proportionately reduced. (2) That if the fee as fixed by the Vaile contract should be subject to supervision by the Commissioner of Indian Affairs and the proof of services required as provided by § 2104, then the parties should make such proof independently.

It is contended by plaintiff in error that "the Vaile contract was confessedly invalid and was not enforced and Owen (plaintiff in error) was not paid by virtue of its validity, but upon 'proof of service.'" The contention as to the invalidity of that contract is made for the first time in a supplemental brief filed by plaintiff in error after the oral argument. The contract had no validity, it is said, "for the simple reason that there were thirty-two thousand Eastern Cherokees, citizens of the United States, who obviously could not be bound by a few of their numbers." The purpose of the contention, no doubt, is to show that the contract was not, and that proof of services was, the ground of the action of the Court of Claims. And yet it is conceded that to Vaile was assigned three per cent of the fee allowed by the court. Why? It may be asked, and what other evidence is there in the record that plaintiff in error had any authority to appear for the Indians except through his engagement by Vaile? He was one of the attorneys of record—how did he become such? May we assume that it was in some other way than the record shows?

The contention, however, has not much relevancy. The agreement sued on states the authority of plaintiff to be the Vaile contract and the foundation of his power to engage defendants in error. His services and their services get their sanction from that contract, and according to the findings of the trial court he "was paid the full amount of the fees contemplated to be received by him according to the terms of the said contract between him and Dudley & Michener."

Our construction of the contract is fortified by that finding. It is also fortified by the letter which plaintiff in error addressed to the defendants in error April 17, 1905, which is set out in the bill of exceptions, and the subsequent conversation he had with them. It is also fortified by the finding of the trial court that the attorneys of record had absolute control of the distribution of the fees. The latter finding is attacked by plaintiff in error, and it is asserted that it has no justification in the rules of the Court of Claims, and is contradicted by the fact that fees were allowed others for services. We must take the record as we find it, and under what circumstances fees were allowed others does not appear. But the fact does appear, and we repeat it because we regard it as especially pertinent, that the plaintiff in error received the fees and the exact fees that he expected to receive by his contract with Vaile with aid of legislation, upon which event he promised to pay defendants in error ten thousand dollars ($10,000) for their services. And there is no denial that they rendered them, and no question is made of their value and efficiency.

*Judgment affirmed.*